**SO ORDERED.**

**SIGNED this 19 day of June, 2015.**

*[signature]*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 03-02654-8-SWH |
| CHARLES HAROLD SLEDGE, MARGARET LYNN SLEDGE, | |
|     DEBTORS | |
| WILLIAM P. JANVIER, TRUSTEE, | ADVERSARY PROCEEDING NO. 04-00033-8-SWH-AP |
|     Plaintiff, | |
|     v. | |
| MARGARET LYNN SLEDGE, PLANTERS BANK AS TRUSTEE OF W. JEFF HAMMOND TRUST, | |
|     Defendants. | |

**ORDER DENYING MOTION TO RECONSIDER**

Pending before the court is the motion to reconsider filed on July 3, 2014 by the defendant in this proceeding (and debtor in the underlying bankruptcy case), Margaret Lynn Sledge ("Ms. Sledge"). The motion pertains to a judgment entered in this court more than a decade ago, on July 15, 2004. A response in opposition to the motion was filed by William P. Janvier, the Chapter 7

Trustee. A hearing was held in Raleigh, North Carolina on April 7, 2015, after which the court took the motion under advisement. For the following reasons, the motion to reconsider will be denied.

## PROCEDURAL HISTORY

As set forth in an earlier order[1], Charles Harold Sledge and Margaret Lynn Sledge filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 24, 2003. The bankruptcy case was converted to one under Chapter 7 on August 19, 2003, and this adversary proceeding (AP 04-00033-8, the "turnover AP") was filed by the Chapter 7 trustee on February 10, 2004, seeking turnover of the income and principal of Ms. Sledge's beneficial interest in a trust that was executed in Kentucky on March 19, 1976, by Ms. Sledge's grandfather, W. Jeff Hammond. The trust (hereinafter the "Hammond Trust") named Ms. Sledge as a beneficiary, along with her mother, brother, and sister, and Planters Bank was appointed as trustee. A notation on the Hammond Trust instrument indicates that Ms. Sledge (then known as Lynn Tull) was 17 years old at the time the trust was executed, making her the youngest of the beneficiaries.

Ms. Sledge initially was entitled to 12.5% of the net income of the trust corpus. As trustee, Planters Bank was directed to hold, manage, and control the property comprising the trust estate, and to collect and disburse net income to the trust beneficiaries "periodically but at least semi-annually." In addition, the instrument provided that the trustee had "sole and absolute discretion" to make disbursements from the trust principal "at any time and from time to time ... as it may deem

---

[1] The bankruptcy case and adversary proceeding were originally assigned to Judge J. Rich Leonard, who entered the order that is the subject of Ms. Sledge's motion to reconsider. Upon Judge Leonard's retirement, the case and proceeding were assigned to Judge Randy D. Doub, who entered the order reopening this adversary proceeding on May 8. 2014. After the untimely death of Judge Doub, the proceeding was assigned to the undersigned. The procedural and factual history set forth herein are taken primarily from Judge Doub's order of May 8, 2014.

advisable to provide adequately and properly for the health, maintenance, education and support" of the beneficiaries. Finally, the trust provided:

> No beneficiary of any trust created hereunder shall have any right or power to anticipate, pledge, assign, sell, transfer, alienate or encumber his or her interest in the trust, with income or corpus or both, in any way, nor shall any such interest in any manner be liable for or subject to the debts, liabilities or obligations of such beneficiary or claims or (sic) any sort against such beneficiary.

The trust provided that it would cease upon the death of Ms. Sledge's mother, at which point her mother's shares of income and the trust corpus would be divided between Ms. Sledge and the other two beneficiaries, assuming they had reached the age of 50. *Order of May 8, 2014* at 2-3 (DE 43).

Arguing that this language established a spendthrift trust which protected both her current income and any future interests from creditors, Ms. Sledge moved for summary judgment, which the court granted in part in an order entered on June 23, 2004. Agreeing with Ms. Sledge that Kentucky law applied, the court held that "[b]ecause spendthrift trusts are so generously defined under Kentucky law, the court concludes as a matter of law that the Hammond Trust is a valid spendthrift trust with transfer restrictions that are binding in bankruptcy." *Order of June 23, 2004* at 4 (DE 10). Judge Leonard awarded summary judgment to Ms. Sledge on the question of whether her current income was shielded from the claims of creditors; however, the court also held that the trustee had succeeded to her contingent remainder interest in the trust *res*. Prior to entering judgment consistent with that order, the court allowed Ms. Sledge an opportunity to respond. Again, Ms. Sledge argued that her contingent remainder interest in the trust corpus was protected by the spendthrift provisions and could not be property of the estate.

In an order entered on July 15, 2004, Judge Leonard acknowledged that there were two conflicting lines of cases with respect to whether a debtor's future alienable interest in a spendthrift

3

trust became property of the estate, with one line of reasoning holding that it is not property of the estate and the other holding that it is. Having considered both, the court sided with "the courts holding that a contingent remainder in a spendthrift trust is property of the estate" as reaching the "better reasoned" result. The judgment accompanying the court's order provided as follows:

> IT IS ORDERED AND ADJUDGED that the female debtor's current income from the Hammond Trust is shielded from claims of creditors, other than claims brought on behalf of creditors pursuant to Ky. Rev. Stat. Ann. 381.180(6).
>
> IT IS FURTHER ORDERED AND ADJUDGED that the female debtor's contingent remainder interest in the Hammond Trust is property of the estate.

*Janvier v. Margaret Lynn Sledge*, AP No. L-04-00033-8-AP, Judgment (July 15, 2004) (DE 13). The judgment was appealed, but that appeal was dismissed as untimely. The turnover AP was closed on April 12, 2005.[2]

Separately, in the same underlying bankruptcy case, the trustee brought an additional adversary proceeding against the debtors seeking to deny their discharge based upon the debtors' failure to schedule the Hammond Trust[3] (*i.e.*, the trust presently at issue in this motion). The trial in that proceeding (AP 04-00011-8, the "denial of discharge AP") took place in Wilmington, North Carolina over two non-consecutive days; November 17, 2004, and February 10, 2005. After it became apparent on the first day of trial that the debtors' then-attorney Mr. Gemborys and his staff

---

[2] The circumstances of the untimely appeal and Mr. Gemborys' representation of the debtors have been throughly addressed in testimony and in the parties' filings. Ms. Sledge testified at length regarding these matters in the hearing on the motion to reopen the adversary proceeding, and there is no need to review them any further in this context.

[3] Virtually all of the filings and testimony in these matters refer to the Hammond Trust in the singular (*i.e.*, as "the trust," not "the trusts"), though both sides acknowledge that the Hammond Trust is comprised of at least two separate trusts. There is no suggestion of misunderstanding among the parties, and in keeping with the parties' typical usage throughout the history of these matters, the court likewise will use the singular form of reference rather than the plural.

4

would be material witnesses in the proceeding, the trial was continued to allow Ms. Sledge to obtain new counsel.

The debtors retained Mr. John Bircher, who represented them for the remainder of the trial, including resolution of the proceeding by way of compromise and settlement. The trial included extensive testimony by both Mr. and Mrs. Sledge, both of whom among other things very specifically addressed the Hammond Trust and the court's ruling on the spendthrift trust issue in the turnover AP. In the midst of the trial, the debtor/defendants and trustee elected to compromise and settle the matter. The proposed terms of settlement were discussed in open court, noticed to all creditors, and commemorated in an order entered on March 31, 2005, which established the following terms:

> 1. The Debtors will pay to the Trustee one half of *all distributions* they receive or become entitled to receive *from any trust* for seven years from the date this settlement is approved. In the event the Debtors fail to promptly make any such payment, their discharge shall be revoked.
>
> 2. *The Trustee shall retain all rights in the trusts as provided in this Court's Order and Judgment in Adversary Proceeding 04-00033-8-JRL.*
>
> 3. The Debtors shall receive their discharge.

*Order Granting Trustee's Motion for Authority to Compromise or Settle AP L-04-00011-8-AP*, (March 31, 2005) (DE 32) (emphasis added). Also on March 31, 2005, the AP was dismissed and the proceeding was closed. The debtors did not appeal the order, nor did Ms. Sledge seek to reopen the denial of discharge AP.

In the underlying bankruptcy case (Case No. 03-02654-8-RDD), the debtors ultimately did fulfill the first requirement of the settlement agreement, paying over to the trustee one-half of all distributions for the seven-year period. There were two significant breaches of the agreement, but

5

for both, the debtors were able to avoid revocation of their discharge. First, in 2007, the debtors failed to turn over the trustee's portion of several monthly distributions. This was resolved on September 6, 2007 pursuant to a consent order which provided that if the debtors were more than 30 days delinquent on any payment, their failure to maintain the schedule "will result in immediate revocation of the Debtors' discharge without further notice or hearing." *Order Directing All Trust Payments to the Chapter 7 Trustee* ¶¶ 8-10 (July 15, 2008) (DE 186) (discussing terms of September 6, 2007 order).

Then, on February 22, 2008, the trustee filed a motion for contempt and to revoke discharge for the debtors' failure to disclose and turn over to the trustee the estate's share of a $25,000 payment made to the debtor *on January 11, 2007.* (DE 165) As Ms. Sledge explained in her response to the motion, which she filed on March 7, 2008 in the form of a letter to the court, the $25,000 payment was a "windfall" obtained when the state of Kentucky took over a piece of property held by the trust, resulting in the trust making payment to Ms. Sledge "from the principal." Ms. Sledge did not disclose this payment, instead using it to pay family expenses. When the trustee learned of the payment and filed his motion to revoke discharge, Ms. Sledge explained her actions by reiterating her belief that her loss of the trust corpus was "not her fault" and was attributable to Mr. Gemborys' bad advice and errors. In particular, she stated that the trustee would not have pursued her trust in the first place, had it been properly disclosed in the first place. She wrote: "He [the trustee] gets quarterly print outs on my trust and as I had not heard a word from him about it, I figured he viewed it as I did." *Letter [to the Court] of February 26, 2008*, at 4 (DE 168). The trustee obviously was not of this view, but the debtors again avoided a revocation of their discharge, and the motion for contempt was resolved by a court order requiring that all trust income payments

6

be made first to the trustee for remission of a portion to Ms. Sledge, rather than the other way around. *Order Directing All Trust Payments to the Chapter 7 Trustee* (July 15, 2008) (DE 186).

At this juncture, the decision upon which Ms. Sledge bases her motion to reconsider was entered. Specifically, *Wachovia Bank v. Levin*, 419 B.R. 297 (E.D.N.C. 2009), was filed by the district court on November 4, 2009.

Almost two and a half years later, in early 2012 (according to Ms. Sledge's testimony before the court on April 15, 2014, in connection with her motion to reopen the adversary proceeding), Ms. Sledge sent emails to the trustee regarding resumption of her receipt of full payments of trust income, and expressing her belief that all was "done." She testified that the trustee replied that "I would be getting my income back but he still owned the corpus of the trust." According to Ms. Sledge, she had for the past seven years been of the belief that she had regained her full interest in the trust corpus, and "didn't find out until I wrote an email to Mr. Janvier in 2012 that this was not the case." Transcript of Hearing on April 15, 2014 at 27-28, AP 04-33 (DE 39).

The seven-year period concluded, so the trustee filed a motion reporting that the disbursements had been completed and requesting that "all future, regular monthly distributions of the Trust" should be paid directly to the debtors. The court allowed the motion, and also stated in its order that the "Trustee remains entitled to the eventual distribution of the contingent remainder interest upon termination of the Trust," such that "all non-regular payments, including payment of the contingent remainder of the Trust, shall be paid to the Trustee." *Order Granting Motion to Allow Debtor to Receive Payments* (March 28, 2012) (DE 216).

Next, approximately four years after *Wachovia Bank v. Levin* was handed down, on November 21, 2013, Ms. Sledge filed a motion to compel the trustee to abandon his interest in the

Hammond Trust and also in the "Testamentary Trust of W. Jeff Hammond," arguing that she had satisfied the payment requirements imposed by the settlement agreement and that "[t]he Chapter 7 Trustee has had over 9 years from when it was determined that the female Debtor's contingent remainder interest was property of the bankruptcy estate in which to market said interest. The Chapter 7 Trustee has been unable to find a buyer. The lack of a buyer shows that said interest is not marketable, and, as such, has no value to the estate." For that reason, Ms. Sledge maintained, "[i]t is in the best interest of the bankruptcy estate to compel the Chapter 7 Trustee to abandon the unmarketable contingent remainder interest of Margaret Lynn Sledge." *Motion to Compel Trustee to Abandon Interest In Property* at ¶¶ 5, 7 (November 11, 2013) (DE 226).

The trustee objected, pointing out that debtor's receipt of her discharge was based on the turnover of payments *and* the trustee's retention of rights in the Hammond Trust as provided in the settlement and compromise agreement entered in the discharge AP (04-11). As to that, the trustee explained that "[t]he estate will receive a significant distribution from the Hammond Trust in the future. As such, it is in the best interest of the bankruptcy estate and its creditors for this case to remain open and for the Trustee to keep his rights to Margaret Lynn Sledge's contingent remainder interest." *Objection to Motion to Compel Trustee to Abandon Interest in Property* at ¶¶ 2-3, 5 (December 20, 2013) (DE 229). Ms. Sledge's mother died two months later, in January 2014. Ms. Sledge's interest in the trust corpus was no longer contingent, and on February 24, 2014, Ms. Sledge withdrew that motion.

8

On February 28, 2014, she filed a motion to reopen the turnover AP (04-33), seeking reconsideration of the July 15, 2004 order and judgment.[4] Ms. Sledge testified at the hearing on the motion that despite having agreed to the trustee's retention of those rights, she nonetheless was still under the impression that as a result of paying half of her trust income into the estate for seven years, the matter "would be over." Transcript of Hearing on April 15, 2014, AP 04-33 (DE 39). As grounds to reopen the AP, she cited the inadequate assistance of counsel in connection with filing the petition 2004, and, for the first time, the existence of subsequent controlling case law; the *Wachovia Bank v. Levin* case. On May 8, 2014, the court granted Ms. Sledge's motion, concluding in its discretion that the issues raised therein were of sufficient substance to establish "cause" to reopen the proceeding pursuant to § 350(b).

On July 3, 2014, in the reopened turnover AP (04-33), Ms. Sledge filed a motion to reconsider the court's order and judgment of July 15, 2004, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, based on the following rationale:

> Subsequent to this in a different case, The (sic) U.S. District Court for the Eastern District of North Carolina held that the "determination as to whether a Debtor's interest will be included in the bankruptcy estate is made at the commencement of the case." *Wachovia Bank v. Levin*, 419 B.R. 297 (E.D.N.C. 2009). Further, the Court held that at "the commencement of the case, the principal of the Trusts was protected by spendthrift provisions."

*Motion to Reconsider* at 1 (DE 45).

The trustee argued in opposition that the motion was neither supported by nor filed within the "reasonable time" parameters of Rule 60 of the Federal Rules of Civil Procedure, and that the

---

[4] Ms. Sledge did not seek to reopen the denial of discharge AP (04-11), which, as discussed above, was resolved by court order incorporating the trustee's retention of his rights in the Hammond Trust.

*9*

EDNC decision in *Wachovia Bank v. Levin (In re Stroehmann)* has little to no bearing on this case because the Hammond Trust "contains different language from the *Stroehmann* case, and is interpreted under Kentucky, rather than Pennsylvania, law." *Response in Opposition to Motion to Reconsider* at ¶¶ 1-5 (DE 46). Finally, the trustee emphasized that the specific ruling challenged by Ms. Sledge also is part and parcel of the settlement agreement reached by Ms. Sledge, her former spouse, and the trustee in the denial of discharge AP, pursuant to which the Sledges received their discharge: "That term was agreed to by the Debtors, was material to the Trustee, and was likely relied upon by the creditors who chose not to object to the proposed settlement. Upon information and belief, it also was material to the court." Id. ¶ 9. Thus, the trustee maintained, the action sought by Ms. Sledge in the reopened turnover AP "would also necessarily require overturning the settlement in Adversary Proceeding 04-00011-8 and require revocation (9 years after the fact) of the discharge of the movant (Margaret Sledge), as well as revocation of the discharge of the non-movant Debtor (Charles Sledge)." Id. ¶ 10.

The court entered an order on July 23, 2014, stating that the best interests of all parties were best served through a global mediation. This, unfortunately, proved unsuccessful, and the court-appointed mediator's report indicting the parties were at an impasse was filed on February 4, 2015. The motion to reconsider was calendared for hearing, which took place on April 7, 2015 in Wilmington, North Carolina.

## DISCUSSION

After full review, the court declines to reconsider the July 15, 2004 order and judgment, and the motion is denied for multiple and independent reasons. First, the motion was not made within a reasonable time as required by Rule 60(c). Further, even if the motion had been timely, Ms.

10

Sledge has not established reasons sufficient to justify the relief sought as required by Rule 60(b)(6). The equitable concerns cited by Ms. Sledge do not work in her favor, and, even if the court did have appropriate grounds on which to reconsider the July 15, 2004 Order and Judgment in light of the *Levin* decision, doing so would not advance Ms. Sledge's arguments.

Ms. Sledge brings the motion to reconsider pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Rule 9024 of the Federal Rules of Bankruptcy Procedure. The rule outlines the circumstances in which a court may exercise its discretion to grant relief from a judgment or order to a party, and provides in relevant part:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1)   mistake, inadvertence, surprise, or excusable neglect;
> (2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)   the judgment is void;
> (5)   the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)   any other reason that justifies relief.

A motion under Rule 60(b) "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c).

## I.   Rule 60(c) "Reasonable Time" Requirement

At the outset, the court concludes that this motion was not brought within a reasonable time. The procedural history of this AP, the parallel turnover AP, and the bankruptcy case are set out above at length for several reasons, one of which is to establish a timeline. The apparent catalyst

11

for the motion to reopen the denial of discharge AP and to reconsider the 2004 order was entry of the *Wachovia Bank v. Levin* decision on November 4, 2009. The motion to reopen this AP to seek reconsideration of the 2004 order was filed on February 28, 2014 – more than *four years* later. As the above discussion makes clear, the question of the trust corpus had Ms. Sledge's attention during that span of time, as evidenced by her communications with the trustee in early 2012 and her November 21, 2013 motion to compel the trustee to abandon the property due to its "lack of value," filed just prior to the death of Ms. Sledge's mother. The instant motion to reconsider was brought mere days after that effort failed. The court finds that this motion to reconsider was not brought within a reasonable time within the meaning of Rule 60(c), and it is denied on that basis.

## II.     Lack of Equity-based Reasons Justifying Relief

In addition, even if the motion had been timely, it is most emphatically not supported by "any other reason that justifies relief."[5] As grounds for relief (and also as an explanation for delay), Ms. Sledge cites her surprise at the trustee's retention of the trust corpus on behalf of the estate, maintaining that she was fundamentally unaware at the time she agreed to settle the denial of discharge AP that not one but *both* of the terms to which she agreed would, in fact, apply. There is no plausible basis upon which Ms. Sledge could have formed this belief in the first place, much less continued to hold it in the face of a flood of information to the contrary. Without belaboring this point, beyond cautioning Ms. Sledge that her own testimony on this topic makes her position wholly untenable, the court concludes that even if the Rule 60(b) motion were timely, there are no equitable

---

[5] Ms. Sledge bases her motion on Rule 60(b)(6), the most open-ended of the grounds for relief. She could as easily have cited Rule 60(b)(5), given that the gist of her argument in this motion (and in virtually all other matters brought before the court over the last ten years) is that it is neither equitable nor "fair" for the bankruptcy estate to retain ownership of the Hammond Trust corpus.

12

factors upon which the court could possibly find, in the exercise of its discretion, sufficient reason to justify the relief sought.

There are, in fact, significant equitable concerns that weigh toward denial of the motion to reconsider the July 2004 order. The most obvious of these is that the terms of that order, which specifically cited the trustee's entitlement to the trust corpus, were material to and incorporated into the agreement by which Ms. Sledge and her then-spouse settled the denial of discharge AP and, ultimately, obtained their discharge. As the trustee points out, the relief Ms. Sledge seeks would require the unwinding of multiple other orders and events: "Any Order reconsidering the judgment in this adversary proceeding would also necessarily require overturning the settlement in [the denial of discharge AP] and require revocation (9 years after the fact) of the discharge of the movant (Margaret Sledge), as well as revocation of the discharge of the non-movant Debtor (Charles Sledge)." *Response in Opposition to Motion to Reconsider* at ¶¶ 6-10 (DE 46). There is simply no basis upon which this court should set in motion a series of events so obviously at odds with the underlying premise and goals of the Bankruptcy Code.

**III.    No Change in Case Law Sufficient to Provide Reason for Relief**

Finally, even if the motion to reconsider was timely, Ms. Sledge's primary basis for requesting consideration also is not persuasive. Specifically, Ms. Sledge argues that the district court's decision in *Wachovia Bank v. Levin* supports reconsideration because it "acknowledg[es] the change in controlling case law since 2004." *Memorandum in Support of Motion to Reopen Adversary Proceeding* at 4 (DE 36). In that case, the question was "to what extent Pennsylvania spendthrift law would restrain alienation of [the debtor's] future remainder interest" in the trust at

issue. *Wachovia Bank v. Levin*, 419 B.R. 297, 301 (E.D.N.C. 2009), *aff'd*, 436 Fed. Appx. 175, 181-82, 2011 WL 2550435 *7 (4th Cir. 2011) (*per curiam*).

The court agrees with Ms. Sledge that the facts and legal discussion in the *Levin* spendthrift trust decision have much in common with the facts and legal discussion relevant to July 2004 order pertaining to her spendthrift trust entered in the turnover AP, but the opinion cannot be read as expansively as she urges, nor does it mark a "change in controlling case law." In *Levin*, the district court referred to one of the orders previously entered in the turnover AP, in this context:

> The split among state laws identified by the Bankruptcy Court as to the protection of a debtor's future remainder interest in the distribution of a spendthrift trust upon termination of the trust does not support the Bankruptcy Court's conclusion that the principal here is unprotected because Pennsylvania law alone applies to the instant case. The Bankruptcy Court relied on *Janvier v. Sledge*, 03-02654-8-JRL (Bankr. E.D.N.C. June 23, 2004) and *In re Laughey*, 02-04762-8-JRL (Bankr. E.D.N.C. Nov. 26, 2002). But *Sledge* dealt with Kentucky rather than Pennsylvania law. Although Kentucky and Pennsylvania law similarly define spendthrift trusts, Pennsylvania Courts have held that a properly drafted spendthrift provision will protect a vested remainder interest in the principal of a trust and *that conclusion is controlling here*.

*Id.* at 303 (emphasis added). There is no basis upon which this court can construe the *Levin* decision as signifying a "change in controlling case law." At most, the decision can be read to indicate that the district court was not influenced by the existence of the conflicting lines of cases cited by Judge Leonard in the July 2004 and June 23, 2004 orders.

This interpretation of the *Levin* decision is consistent with, and supported by, the Fourth Circuit's *per curiam* opinion affirming the district court. In it, the appellate court emphasized:

> The district court explained that the apparent split of authority does not support the bankruptcy court's conclusion that the principal here is unprotected because Pennsylvania law alone controls this case. As the district court recognized, Pennsylvania law protects remainder interests in the corpus of a trust if the spendthrift provision of the trust instrument so provides. [multiple citations to Pennsylvania state cases omitted.]

14

> *The issue is thus not whether we should choose to follow one line of cases or the other.* Rather, we are compelled to follow applicable nonbankruptcy law. 11 U.S.C. § 541(c)(2). In this case, that means we apply Pennsylvania law. Under Pennsylvania law, "the intention of the testator or settlor must prevail." [citation omitted.] For the reasons explained above, we believe that by explicitly invoking the trusts' principal, the settlor here intended the spendthrift provision to apply to the debtor's remainder interests therein.

*Levin v. Wachovia Bank*, 436 Fed. Appx. 175, 181-82, 2011 WL 2550435 *7 (4th Cir. 2011) (*per curiam*) (emphasis added). In sum, neither of the *Levin* decisions contradict the bankruptcy court's long-ago choice of which line of cases to follow; rather, both the district and appellate courts elected to ignore the "split of authority." Further, given both courts' focused reliance on Pennsylvania law, neither opinion bears on the nonbankruptcy law that controls in this case, which is Kentucky law. Moreover, even this motion to reconsider were not untimely, and even if the court could construe the *Levin* decision as providing some kind of gateway to revisit the conclusions set out in the July 2004 order, the fact remains that the particular component of the order Ms. Sledge now seeks to challenge also is incorporated into the settlement order entered in the denial of discharge AP. As discussed above, the parties' change in position based on those terms, along with resolution of that AP and the discharge entered in the bankruptcy case for both Ms. Sledge and her former spouse, preclude the relief Ms. Sledge seeks.

## CONCLUSION

For the foregoing reasons, the motion to reconsider is **DENIED**, and this adversary proceeding is **CLOSED**.

**SO ORDERED.**

### END OF DOCUMENT